[No. 3964.   Decided July 16, 1901.]

C. L. PARKER *et al.* v. SUPERIOR COURT OF SNOHOMISH COUNTY *et al.*

PROHIBITION, WRIT OF—WHEN LIES—JURISDICTION OF TRIAL COURT —UNAFFECTED BY PREMATURE APPEAL.

Prohibition will not lie to restrain the superior court from further proceeding in an action to condemn a stream as a right of way for logging purposes, on the ground of a removal of the

cause from the jurisdiction of the trial court by appeal, where the appeal was from an order overruling a demurrer to the petition, although such demurrer raised the question of public use, and Laws 1901, p. 213, provide that "either party may appeal from the order of the court adjudicating or refusing to adjudicate that the contemplated use of the property sought to be appropriated is really a public use," since the ruling was simply upon the demurrer (which was not an appealable order), and was not an adjudication upon the facts, from which latter character of order only would an appeal lie. (ANDERS and WHITE, JJ., dissent).

CERTIORARI — WHEN LIES — ADEQUATE REMEDY BY APPEAL.

Certiorari will not lie to bring up for review the action of the lower court in permitting parties to a condemnation suit for right of way to make use thereof without first making compensation to the owners, since there is an adequate remedy by appeal from the judgment in the condemnation proceedings.

*Original Application for Prohibition.*

*C. L. Parker,* for petitioners.

*Kerr & McCord* and *J. A. Coleman,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—This is an application for a writ of prohibition commanding the superior court of Snohomish county and the judge thereof to desist and refrain from further proceeding in a certain cause instituted by Carstens & Earles, Incorporated, and others, in said court, against these plaintiffs to condemn a stream known as "Bear Creek," and a strip of land 25 feet wide on each side of the center line of that stream, over and through certain lands of the plaintiffs herein, as and for a right of way for logging purposes. The affidavit upon which the motion for the writ is based states, in substance: That the affiant, C. L. Parker, is one of the applicants for the writ, and the attorney for each of the applicants, and that he is one of the defendants in a certain cause in the superior court for Snohomish county, in which cause Carstens &

Earles, Incorporated, and others, are plaintiffs, and C. L. Parker and others are defendants. That said cause in said court is an action brought by the plaintiffs therein to condemn a right of way across defendants' land for the purpose of constructing, maintaining, and operating a canal, flume, or ditch, or right of way, for the purpose of floating shingle bolts. That plaintiffs' complaint was served upon affiant, as one of the defendants therein, on May 12, 1901. That the defendants demurred to said complaint on the ground that it did not state facts sufficient to constitute a cause of action. That the complaint did not show that the purpose for which defendants' property was sought to be condemned was a public use. That said demurrer was overruled by the court on May 11, 1901, and the defendants were given ten days in which to answer, and that the defendants excepted to the ruling of the court, and the exception was allowed. That notice of appeal from said ruling of the court was served by the defendants upon the plaintiffs' attorneys on May 20, 1901, and filed with the clerk of said court on May 21, 1901. That without any notice to affiant, as party to said cause, or as attorney for the defendants therein, a temporary injunction was served upon the defendant A. H. Howells, commanding him not to interfere in any manner with the driving of shingle bolts by plaintiffs through the defendants' land until the further order of the court, and commanding the defendants to show cause on May 25, 1901, before the court, why said order should not be made permanent. That on May 25, 1901, said order was modified so as to read as follows:

"It is ordered that pending the final determination of this cause the defendants and each and all of them be and they are hereby enjoined from in any manner interfering with Grace Mill Company, its agents and employees, in the matter of using the stream described in the complaint

for floating shingle bolts therein through the land of the defendants, described in the complaint, but the plaintiffs shall not trespass upon the upland bordering upon said stream, or in any manner interfere with the bed of said stream. It is further ordered that said Grace Mill Company file herein forthwith a bond for fifteen hundred dollars ($1,500) conditioned as required by law. Said bond to be approved by the clerk of this court."

That the defendants excepted to the ruling of the court in continuing the injunction in force, and the exception was allowed. That on May 27, 1901, affiant, as attorney for the defendants in the condemnation proceeding, was served with a motion for default, and a notice that said motion would be heard on June 1, 1901, but that the hearing of said motion was continued to June 15, 1901, at which time the said court will hear the same, unless prohibited by this court from further proceeding with the cause until the appeal now pending in this court shall be finally determined. The affidavit further states "that the rights of the plaintiffs herein, as guaranteed by the constitution of this state, have been infringed and invaded by the action of the plaintiffs in said cause, and by the temporary restraining order of said superior court; that the said complaint and the plaintiffs' affidavit in support of motion for injunction show that said stream cannot be used by any person for floating shingle bolts without trespassing upon and without injuring the property of defendants in said cause; that anything that could be recovered in an action at law for trespass will not be adequate compensation for the damages to the property of these plaintiffs, and for the humiliation placed upon them, and for their wounded feelings, by reason of being compelled, by plaintiffs in said cause, and by the order of said superior court, to stand by and see their property taken and used contrary to the provision of the constitution of the state and against

their will;" that the order of said superior court in con-
tinuing said injunction in force ought to be reviewed by
this court, and dissolved; that no person can use said
stream without trespassing on the land of these plaintiffs,
and these plaintiffs ought not to be forced to an action at
law for damages for trespass. It is also stated in the affi-
davit that said stream is very crooked, narrow, and shal-
low; that affiant has measured the width of said stream in
seventy-one places as it flows through defendants' land;
that the narrowest place measured is eight feet in width,
and the widest place measured is where the banks have been
dug out by shingle bolts and washed by said creek, and
that at that place said creek is twenty-four feet wide;
that an average width of said stream is about twelve and
one-half feet; that said stream was measured by affiant
on June 9, 1901, at a time when the water was at a higher
than an average stage; that said stream was measured at
frequent intervals where it was easy of access, and that
the depth of water in said stream for the width given did
not exceed about six inches; that the plaintiffs in said ac-
tion for condemnation have cut the brush along the banks
of said stream, causing it to wash, and have allowed their
shingle bolts to be driven by high water against the bank
of the stream, causing it to cave in, thereby damaging the
owners of the land; that they have chopped and removed
from the bed of the stream roots which grew therein and
formed a part thereof and a part of the bank, and were
the private property of the owners; that shingle bolts be-
longing to the plaintiffs in said cause are strewn along and
upon the banks of said stream, and are lodged against the
bed of the stream, and are remaining therein, and on the
small gravel bars, and the said plaintiffs are using the said
stream and the plaintiffs' property for storing their shingle
bolts, all against the will of the plaintiffs herein and

against the law and constitution of this state; that the said
Grace Mill Company, through its agents and employees,
has, since the restraining order of said superior court, tres-
passed upon the premises of these plaintiffs as described
in said complaint, and has harassed and annoyed these
plaintiffs.

At the time designated for the hearing of the motion
for the writ of prohibition in this court, the defendants
appeared by their counsel, and objected to the affidavit and
papers connected therewith filed by the plaintiffs herein,
on the grounds that it affirmatively appears from the af-
fidavit and moving papers attached thereto that the plain-
tiffs herein made no objection to the jurisdiction of the
superior court against which a writ of prohibition is sought,
and that the question of the jurisdiction of said court to
grant the prayer of plaintiffs' complaint was not, in any
manner, raised in the lower court; that the superior court
of Snohomish county is clothed with jurisdiction to hear
and determine the matters and things alleged in the com-
plaint of Carstens & Earles et al., plaintiffs, v. C. L. Par-
ker et al., defendants, that the appeal referred to in plain-
tiffs' complaint is from an order overruling a demurrer to
the complaint, which demurrer admits that the stream
sought to be condemned for the floatage of timber is float-
able for timber and navigable for that purpose, and that
necessity exists for the condemnation thereof as provided
for in the statutes of this state; that the plaintiffs have an
adequate remedy at law for any and all damages that may
arise by reason of the matters and things complained of;
that there is pending in the superior court of Snohomish
county a motion interposed by the plaintiffs herein to dis-
solve the temporary restraining order heretofore issued
and that said motion is set for hearing on June 15, 1901;
that the plaintiffs have not sought in vain for relief in

the trial court, and it does not appear that said trial court will not grant relief from the matters and things alleged by said C. L. Parker in his affidavit herein; that the acts and things of which plaintiffs complain have already been completed; and that no necessity exists or is shown for the issuance of a writ of review herein, because it appears from the said affidavit and moving papers that the matters and things sought to be reviewed are all covered by the appeal the plaintiffs allege they have presented to this court.

We are confronted at the threshold of this case with the objection of the learned counsel for the defendants that plaintiffs herein have attempted to appeal from an order overruling their demurrer to the complaint of the plaintiffs in the condemnation proceeding in the superior court of Snohomish county, and that such order is not appealable; and, inasmuch as the plaintiffs' right to a writ of prohibition depends upon whether the said cause has been transferred to this court by the alleged appeal, it is necessary to determine the question thus raised. An appeal will not lie from a mere order overruling a demurrer. It is the province of the legislature to determine from what orders and decisions an appeal may be taken, and the legislature of this state has provided, in the amendatory act of March 16, 1901, that "either party may appeal from the order of the court adjudicating or refusing to adjudicate that the contemplated use of the property sought to be appropriated is really a public use, . . . within thirty days after the entry of said order;" and the act is made applicable to all such proceedings as were pending at the time of its approval. Laws 1901, p. 213. In the complaint in the condemnation proceeding it was alleged that the use for which the property of the plaintiffs herein was sought to be taken was a public use, and the purpose for

which it was required was also set forth.  Under statutes like ours, which are silent as to pleadings on the part of the defendant in condemnation proceedings, the defendant in such a proceeding is not obliged to interpose a formal answer to the petition.  He may object to the condemnation, if he desires so to do, in some other way.  *Where objections are apparent on the face of the papers*, they are usually raised by motion to dismiss the petition, but they may be raised by demurrer, as such a demurrer is deemed equivalent to a motion to dismiss.  *Spahr v. Schofield*, 66 Ind. 168; *Lake Pleasant Water Co. v. Contra Costa Co.*, 67 Cal. 659 (8 Pac. 501); *New Orleans, etc., Co. v. Southern, etc., Co.*, 53 Ala. 211; 7 Enc. Pl. & Pr., p. 539.

It is well said by Mr. Lewis in his work on Eminent Domain, § 389, speaking of the methods of raising objections apparent on the face of the proceedings, that:

"This is ordinarily done by motion to dismiss the petition or application.  If the petition is defective, a demurrer, or exceptions in the nature of a demurrer, will be proper.  The same benefit may be obtained by merely resisting the appointment of commissioners or the selection of a jury on the ground that the papers do not make a case for the exercise of the power.  In any of these ways the questions whether the petition and notice are sufficient, whether the purpose contemplated is a public use, whether the power to condemn for the particular purpose has been delegated, and whether the act under which the proceedings are had is valid, may be raised and decided."

And it has been held that the question of public use or public necessity may be raised at any stage of the proceedings.  *State v. Engelmann*, 106 Mo. 628 (17 S. W. 759).

In the case at bar the question whether the petition was sufficient was raised by demurrer, the defendants specially claiming that it appeared upon the face of the petition that the purpose contemplated by the plaintiffs was not a public use.  It appears from the record before us that the

court heard arguments by counsel for the respective parties upon the questions whether the purpose, *as stated in the complaint,* for which the defendants' property was sought to be appropriated, was a public use, and decided the question upon the *allegations of the complaint merely.* On overruling this demurrer the learned trial court said:

"That the said complaint does state facts sufficient to constitute a cause of action; that the use proposed to be made of the property to be condemned as set forth in the plaintiffs' complaint is a public use. Therefore, that the said demurrer of the defendants to the plaintiffs' complaint ought to be and the same hereby is overruled, and the defendants are given ten days in which to answer."

This was simply a ruling upon the said demurrer, and was not an adjudication upon the facts that the use was a public use, as required by § 5640, Bal. Code. Whether the defendants filed an answer or not within the time given, it was still the duty of the court to try out the question, and be satisfied by *competent proof* that the contemplated use is really a public use. When this adjudication is made by the court, an appeal will lie. No such adjudication has been made in this case, and the lower court has jurisdiction until such appeal is taken. The ruling of the court was not a final order, and did not affect any substantial right. Even if it was error of the court to overrule the demurrer, this court will not review such error on application for a writ of prohibition. The application for the writ will, therefore, be denied.

It appears from the record herein that the trial court, on the hearing of the demurrer in question, permitted the Grace Mill Company, a plaintiff in the condemnation cause, without first making compensation to the owners, to take possession of and use the stream sought to be condemned, on filing a bond to secure the payment of resulting damages, and enjoined the defendants (plaintiffs here)

from in any manner interfering with such use until the further order of the court. The order, however, did not authorize the said company to interfere with the bed or banks of the stream, but simply to use it for the purpose of floating shingle bolts to its mill. The plaintiffs allege that this action of the court was erroneous, and they ask this court to issue a writ of *certiorari* directing said court to certify and transmit the record pertaining to said restraining order to this court, so that the alleged error may be here reviewed. But we do not think they are entitled to the last mentioned writ, for the reason that there is another adequate remedy available to them under § 6500, Bal. Code, which especially provides for an appeal in cases of this character.

REAVIS, C. J., and FULLERTON and HADLEY, JJ., concur.

ANDERS, J. (dissenting).—I am unable to assent to what is said in the opinion of the majority of the court in this case as to the scope and effect of the decision of the trial court upon the demurrer to the plaintiffs' petition in the condemnation matter. It is conceded by the majority of the court that the question whether the use proposed to be made of the property sought to be condemned as set forth in plaintiffs' petition was a public use was properly raised by defendants' demurrer, and that that question was considered and determined by the court is, in my opinion, evident from the judgment itself. It was incumbent upon the petitioners to set forth in their petition the purpose for which they were seeking to appropriate the defendants' premises, in order that the court might see whether such purpose was a public use; and they did state such purpose in their petition in no uncertain or ambiguous language. And it was the manifest duty of the court, in disposing of the demurrer, to determine the character and purpose of the contemplated use *on the allegations of the petition*

*alone, assuming them to be true;* and if it did not do so, it failed to determine the only question before it. But, in my judgment, the court did determine the question raised by the demurrer, and argued by counsel on both sides when it decided "that the use proposed to be made of the property to be condemned as set forth in plaintiffs' complaint is a public use." But it is said by the majority that this was simply a ruling upon the demurrer, and not an adjudication upon the facts that the use was a public use, as required by the statute. Why not an adjudication upon the facts? The facts, it is true, were admitted by the demurrer, but I am unable to comprehend how a decision based on admitted facts is in any respect different from an adjudication upon facts established by proof. The very object of evidence is to *establish* the facts alleged in a pleading, and I have hitherto considered it to be an established rule of law that it is not necessary, or even proper, to prove facts already admitted in the pleadings. If the rule were otherwise, admissions would certainly be profitless and useless.

Believing, as I do, that the lower court, in the condemnation proceedings in question, intended to and did determine and decide "that the contemplated use of the property sought to be appropriated is really a public use," I cannot avoid the conclusion that the defendants, under the provision of the statute cited in the majority opinion, had a perfect right to appeal from that "adjudication." And, if this view is correct, it follows that, after the appeal to this court was perfected, the lower court was without jurisdiction to proceed further in the premises, and ought to be prohibited from so doing.

I concur in the refusal to grant the writ of *certiorari*.

WHITE, J.—I concur in the dissenting opinion of Justice ANDERS.